UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KEITH ELLIS,

Plaintiff,

v.

MICHAEL BURKE, et al.,

Defendants.

Case No. 3:25-CV-349-GSL-APR

**OPINION AND ORDER**

This matter is before the Court on Defendants Michael Burke and Nurse Laquisha Ellis's[1] Joint Motion for Summary Judgment [DE 48]. The motion is fully briefed, [*see* DE 49–50; DE 56–57; DE 59–60],[2] and is now ripe for ruling. For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

## I. Factual Background

As a preliminary note, a party opposing summary judgment must ordinarily file a response to the movant's statement of material facts, which should include the following: (A) a verbatim restatement of the statement of material facts; (B) a correspondingly numbered response following each paragraph; (C) a citation to evidence supporting each dispute of fact; and, for any additional material facts, (D) a separate section containing a short statement of each

---

[1] Defendant Ellis is not given a first name in Plaintiff's Complaint and is named only as "Nurse Ellis." [DE 1]. She is later identified in full in her Answer. [DE 32]. But because the parties' briefing on summary judgment refers to this defendant as Nurse Ellis, the Court, for purposes of consistency, will do so as well.

[2] Plaintiff also filed an unauthorized sur-reply at DE 61, which the Court thereafter struck. [DE 62 (order staying the case and prohibiting the filing of any additional motions absent a request for leave to file)]. *See also* N.D. Ind. L.R. 56-1(d). Although the Court indicated Plaintiff's sur-reply would remain part of the public record, this filing will not be considered for purposes of Defendants' motion for summary judgment.

fact and a citation to evidence supporting it. N.D. Ind. L.R. 56-1(b)(2). Where a fact does not contain a citation to a page or paragraph number to evidence in the record supporting the fact, the Court may find the fact unsupported. L.R. 56-1(e). These rules apply both to represented and unrepresented parties, and pro se litigants are expected to comply with them. *See Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) (citing *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008)) (holding that "even pro se litigants must follow procedural rules").

Nonetheless, our local rules do afford pro se litigants some lenience with respect to the summary judgment procedure. In particular, where the non-moving party is unrepresented, they are not required to restate verbatim the statement of material facts. *See* L.R. 56-1(b)(3). Further, regardless of the party's representation status, it is within the Court's discretion to find a fact supported or unsupported if the citation to the record does not include a page or paragraph number. L.R. 56-1(e). Because Plaintiff is unrepresented, he was not required to file a verbatim recitation of the statement of material facts when preparing his own response, and thus the form of his response to the statement of material facts will not be held against him. And while Plaintiff's citations to his attached exhibits do not exactly identify a specific page or paragraph number—nor does Plaintiff provide a citation after each particular point made in his brief, electing instead to include citations paragraph-style—all but one of the seven attached exhibits are but one page in length, leaving little to no doubt of what Plaintiff is referring to. Accordingly, for purposes of this order, the Court accepts Plaintiff's statement of facts as procedurally compliant. Plaintiff should be aware in the future, though, that the failure to provide specific citations to pages and paragraph numbers after each factual proposition, especially when concerning a denser and more complex record, could result in the sanctioning and exclusion of those unsupported facts.

**A. IDOC Grievance Process**

The Indiana Department of Corrections (IDOC), in addressing inmate-related grievances, relies on a standard grievance process used at all IDOC facilities, including the Westville Correctional Facility (WCF). [DE 48-1 at ⁋ 29]. At WCF, the offender grievance process is made known to each inmate during the Admissions and Orientation process at the outset of the inmate's incarceration. [*Id.* at ⁋ 28]. Copies of the process are obtainable by inmates either in the Law Library or by requesting it from the Grievance Specialist or their staff, and the process is available to all inmates at all times, even if the inmate is located in restrictive housing or the infirmary. [*Id.* at ⁋⁋ 27–28]. The grievance process itself consists of three steps: (a) formally attempting to solve a problem or concern following unsuccessful attempts at informal resolutions through the submission of a written grievance; (b) appealing in writing to the Warden/designee; and (c) appealing in writing to the Department Grievance Manager. [*Id.* at ⁋ 7]. To successfully exhaust the grievance process, an aggrieved inmate must complete each step, must use the proper grievance forms, and must timely file each grievance within the process's prescribed timeframe. [*Id.* at ⁋ 8].

According to WCF's Grievance Specialist, the grievance process plays out accordingly. An inmate submitting a grievance on an informally unresolved issue must complete State Form 45471 ("Offender Grievance") no later than ten business days from the date of the incident giving rise to the complaint. [*Id.* at ⁋ 9]. Grievances cannot be written or submitted by inmates on their prison-issued tablets; rather, the grievance must be written and submitted using WCF-issued paper forms. [*Id.* at ⁋ 10]. Once the grievance is submitted, the form is reviewed within ten business days of its receipt and is either (a) logged in and accepted, where it is then entered into the computer system and becomes visible on an inmate's grievance history; or (b) rejected,

where it is returned to the inmate with State Form 45475 ("Return of Grievance") identifying the reasons for the rejection. [*Id.* at ⁋⁋ 11–12]. One such reason for a rejection is the inmate's failure to submit the grievance within ten business days of the triggering incident. [*Id.* at ⁋ 12].

When a grievance is returned with a State Form 45475, it is the inmate's responsibility to make the necessary revisions to the grievance form and return the revised form to the Grievance Specialist within five business days from the date the form was returned to the inmate. [*Id.* at ⁋ 13]. The Grievance Specialist has the discretion to consider an untimely grievance upon a showing of good cause by the inmate. [*Id.* at ⁋ 14]. When a grievance is accepted for non-emergent matters, the Grievance Specialist has fifteen business days to issue a response to the complaining inmate. [*Id.* at ⁋ 15].

If no response is provided within twenty business days of the grievance's receipt, the inmate may appeal to the Warden/designee as if the grievance was denied. [*Id.*]. If the complaining inmate is dissatisfied with the response, the inmate may appeal the response by completing State Form 45473 ("Grievance Appeal"), which must be submitted within five business days of receiving the grievance response. [*Id.* at ⁋ 16]. Submission of State Form 45473 serves as notice that the inmate wishes to appeal to the Warden/designee. [*Id.*]. Once received, the date of receipt is logged and the appeal is forwarded to the office of the Warden/designee, generating a receipt for the appeal. [*Id.* at ⁋ 17]. The inmate is then provided with a copy of State Form 56285 ("Receipt of Facility Level 1 Grievance Appeal"), and the Warden/designee has ten business days from the date the appeal is received to complete their response and return it to the inmate. [*Id.* at ⁋ 18].

If the aggrieved inmate does not receive a response within that timeframe, the inmate may appeal to the Department Offender Grievance Manager as if the appeal was denied. [*Id.*]. If

the complaining inmate wishes to appeal the Warden/designee's appeal response, the inmate must check the "Disagree" box on the appeal response and submit State Form 45473 along with any pertinent documents to the Grievance Specialist within five business days of receipt of the Warden/designee's appeal response. [*Id.* at ⁋ 19]. The Grievance Specialist then enters the completed State Form 45473 and any additional documents into the grievance database within five business days of receipt, and the Department Offender Grievance Manager has ten business days from the date of entry to complete and submit an electronic response to the Grievance Specialist. [*Id.* at ⁋⁋ 19–20]. Once received, the Grievance Specialist prints a copy of the response and issues it to the inmate within five business days thereafter. [*Id.* at ⁋ 20]. If the inmate does not receive either a response or a notice of extension from the Department Offender Grievance Manager within ten business days, the appeal is considered denied. [*Id.* at ⁋ 21]. The decision of the Grievance Manager is final and marks the conclusion of the offender grievance process. [*Id.* at ⁋ 22].

In emergency cases, an offender may submit an emergency grievance by again using State Form 45471. [*Id.* at ⁋ 23]. The Grievance Specialist must then immediately bring the emergency grievance to the attention of the Warden/designee for review and response within one business day of recording the emergency grievance. [*Id.* at ⁋ 24]. The action on any emergency grievance may be appealed by the offender within one business day of receiving the response. [*Id.* at ⁋ 25]. The appeal is then given to the Department Offender Grievance Manager, who must issue a final departmental decision within five business days of the grievance's filing. [*Id.* at ⁋ 26].

All grievances received by the Grievance Specialist are logged, recorded in, and uploaded to the IDOC's DELTA computer system, a computer record of information relating to offenders

who have been committed to the IDOC's custody. [*Id.* at ⁋⁋ 4, 30]. This includes grievances that are ultimately rejected, as well as those that are accepted and to which a response is issued. [*Id.* at ⁋ 31]. Similarly, all grievance appeals and appeal responses are logged and recorded in the DELTA system. [*Id.*].

**B. Plaintiff's Grievance**

Plaintiff Keith Ellis (DOC# 120400) is an incarcerated individual in IDOC's custody, and has been at all times relevant to this matter housed at WCF. [*Id.* at ⁋ 3]. On November 23, 2024, Plaintiff submitted Grievance No. 24-198483, which pertained to an alleged incident regarding Plaintiff's hands being injured in the cuff port by Defendant Burke after Plaintiff asked if his broken prison-issued tablet would be replaced.[3] [*Id.* at ⁋ 34; DE 56-1 at 2]. The non-emergency grievance also stated that he requested medical care through Sergeant Vesquez, but was denied. [DE 48-1 at ⁋ 35; *see also* DE 48-4 at 2; DE 56-2 at 4]. Plaintiff claimed he requested a grievance to file on Nurse Ellis for the denial of medical treatment, [*see* DE 56-2 at 2], although the grievance form itself does not state who denied Plaintiff medical care, nor does it name Nurse Ellis specifically, [*see* DE 48-1 at ⁋ 35; DE 48-4 at 2; DE 56-2 at 4]. WCF's Grievance Specialist responded to Plaintiff's grievance on December 26, 2024, marking the matter as "resolved," and notified Plaintiff that he could appeal the decision by selecting the "Agree" or "Disagree" option at the bottom of the response, signing it, and returning it within five business days of receipt. [DE 48-1 at ⁋ 36; DE 48-4 at 1; DE 56-2 at 4]. The response was never filled out,

[3] Plaintiff also requested in his grievance that alleged camera footage of the incident be preserved. [DE 56-1 at 2; DE 56-2 at 3].

signed, or returned. [DE 48-1 at ⁋ 37; DE 56-2 at 4]. Further, WCF's DELTA system indicated no additional grievances were filed, nor appeals made.[4]

### II. Procedural Background

Plaintiff initiated this case on April 21, 2025. [DE 1]. Although Plaintiff does not directly state as much, he is bringing claims under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments against Defendant Burke for excessive force, as well as Eighth and Fourteenth Amendment violations against Nurse Ellis for medical negligence. [*Id.* at 3]. On April 23, 2026, Defendant Burke and Nurse Ellis jointly filed their motion for summary judgment on the issue of failing to properly exhaust all administrative remedies. [DE 48]. That motion is fully briefed and is now ripe for ruling. [DE 49–50; DE 56–57; DE 59–60].

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1258 (7th Cir. 2025). Facts are deemed "material" when they "might affect the outcome of the suit under the governing law," and a dispute is considered "genuine" when the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Osborn*, 126 F.4th at 1258 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

[4] On March 20, 2026, the Court ordered Defendants to attach every grievance from November 2024 through March 2025 to their motions for summary judgment on the issue of exhaustion of remedies. [DE 46; *see* DE 50 at 5 n.1]. According to Defendants' DELTA system, Plaintiff's Grievance No. 24-198483 is the sole grievance filed during this period.

The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020). While the facts are construed in the light most favorable to the nonmoving party, the nonmoving party must nonetheless present sufficient evidence to place his "'version of events' beyond the level of mere 'speculation or conjecture.'" *Osborn*, 126 F.4th at 1258 (quoting *Est. of Biegert ex rel. Biegert v. Molitor*, 968 F.3d 693, 701 (7th Cir. 2020)).

## DISCUSSION

Defendants seek summary judgment on the issue of exhaustion of available administrative remedies, arguing that Plaintiff failed to initiate the grievance process against Nurse Ellis and failed to complete the grievance process against Defendant Burke. [DE 49 at 3]. Defendants, therefore, assert that each of Plaintiff's claims are procedurally barred. Plaintiff, in turn, argues that he did seek a grievance against Nurse Ellis and was denied the opportunity to complete the grievance process because he was not given the proper forms to fill out. [DE 56 at 2].

### I. Exhaustion Under the PLRA.

The United States Supreme Court has long explained that "[o]ur legal system is committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law." *Perttu v. Richards*, 605 U.S. 460, 464 (2025) (alteration omitted) (quoting *Jones v. Bock*, 549 U.S. 199, 203 (2007)). Yet the Court has also recognized "[t]he

challenge" of "ensuring that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Id.* (quoting *Bock*, 549 U.S. at 203). To address this challenge, and in light of a sharp rise in prison litigation during the mid-1990s, Congress enacted the Prison Litigation Reform Act of 1995 (codified at 42 U.S.C. § 1997e), which aims to "reduce the quantity and improve the quality of prisoner suits." *Id.* (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Although the PLRA contains several provisions designed to contain this litigation, *see Woodford*, 548 U.S. at 83 (citing §§ 1997e(c)–(e)), a "centerpiece" of the PLRA's effort is an "invigorated" exhaustion provision,[5] which states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted," *Perttu*, 605 U.S. at 465 (alteration in original) (quoting §1997e(a)); *Woodford*, 548 U.S. at 84.

The primary purpose of this exhaustion requirement is to "alert the state to the problem and invite corrective action," *Turley v. Rednour* 729 F.3d 645, 649 (7th Cir. 2013) (alterations

[5] As the Supreme Court explained in *Woodford*, the exhaustion requirement prior to § 1997e(a)'s enactment was either nonexistent or entirely discretionary. *Woodford*, 548 U.S. at 84. Before 1980, prisoners were not obligated to exhaust administrative remedies when bringing constitutional claims. *See id.* (citing *Wilwording v. Swenson*, 404 U.S. 249, 251 (1971) (per curiam)). When Congress enacted the Civil Rights of Institutionalized Persons Act in 1980, a "weak" exhaustion provision was created allowing district courts to temporarily stay actions under § 1983 while a prisoner exhausted "such plain, speedy, and effective administrative remedies as are available." *Id.* (quoting § 1997e(a)(1) (1994 ed.)). This process was largely discretionary though; could be ordered only if the State's prison grievance system met certain federal standards; and even then, was required only if the court believed it to be "appropriate and in the interests of justice." *Id.* (quoting *Nussle*, 534 U.S. at 523). Further, exhaustion was not required where the prisoner sought only monetary damages and such relief was unavailable under the relevant administrative scheme. *Id.* at 84–85 (citing *McCarthy v. Madigan*, 503 U.S. 140, 150–51 (1992)). Following the passing of the PLRA, however, exhaustion became a mandatory rather than discretionary component. *Id.* at 85 (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). Prisoners are now required to "exhaust all 'available' remedies, not just those that meet federal standards," and must further "exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process." *Id.* (citing *Churner*, 532 U.S. at 734). Finally, exhaustion of available administrative remedies has become a staple requirement for all suits challenging prison conditions, and is no longer limited to suits under § 1983. *See id.* (citing *Nussle*, 534 U.S. at 524).

and internal quotation marks omitted), and a grievance will suffice this purpose "if it alerts the prison to the nature of the wrong for which redress is sought," *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Exhaustion therefore "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Nussle*, 534 U.S. at 532. "The exhaustion requirement is interpreted strictly; thus, a 'prisoner must comply with the specific procedures and deadlines established by the prison's policy.'" *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (quoting *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015)); *see also Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004) (explaining that inmates must correctly complete all outlined steps in the grievance process and are barred from filing suit prior to any step being completed). This includes following the prescribed time limits for filing a grievance or appeal. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (citing *Artuz v. Bennett*, 531 U.S. 4, 9–10 & n.2 (2000)). Where a claim is ultimately unexhausted, it is procedurally barred from consideration. *Pyles*, 829 F.3d at 864 (citing *Woodford*, 548 U.S. at 93).

## II. Plaintiff Did Not Exhaust His Available Administrative Remedies Against Nurse Ellis Because He Failed to Initiate the Grievance Process.

Beginning with Nurse Ellis, Plaintiff sought medical care on November 23, 2024, the day of the alleged incident, but claims he was denied. [DE 56-2 at 1].[6] The same day, he submitted an affidavit asserting he "requested a grievance to file on Nurse Ellis for denying [him] medical treatment but was denied on 11/23/24." [*Id.* at 2]. Yet Plaintiff, again on the same day, submitted Grievance No. 24-198483, in which he stated the following:

> On 11/23/24 at [approximately] 9:10 – 9:25 am during rec and shower I was subjected to an act of retaliation by usage [*sic*] of excessive force when I calmly

[6] The same request, later signed by staff on December 5, 2024, indicates that X-rays were ordered for Plaintiff, seemingly contradicting Plaintiff's assertions that he was denied any medical care. [DE 56-2 at 1].

> addressed Sgt. Burke about breaking my tablet. I asked if he could assure it be replaced. He became hostile and aggressive [t]elling me if I spoke about my tablet again he would see to it that I cant [*sic*] speak again. Then as I put my hands thru the cuff port for rec he violently slammed it shut on my hands causing a fracture, swelling, and severe blood. All which can be seen on camera. I then calmly requested medical minutes later thru Sgt. Vesquez and was denied.

[*Id.* at 3]. As the grievance reads in its entirety, Nurse Ellis is nowhere mentioned.[7] The following day, Plaintiff, recognizing the above grievance, submitted a second affidavit asserting he "submitted the following grievance in the superintendent's office via mail box on 11/24/24 to prevent WCU/WCF from disposing [his] grievance." [DE 48-4 at 3]. According to WCF's DELTA system, the only grievance Plaintiff filed for the alleged incident—and the most recent entry overall—was Grievance No. 24-198483 on November 23, 2024. [DE 48-3 at 1].

Plaintiff's affidavit that he was denied an opportunity to file a grievance against Nurse Ellis highlights an issue worth addressing. The Supreme Court and Seventh Circuit have both explained that "so long as the administrative authority has the ability to take *some* action in response to the complaint (even if not the requested action), an administrative remedy is still 'available' under the PLRA." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (emphasis in original) (citing *Churner*, 532 U.S. at 741; *Larkin v. Galloway*, 266 F.3d 718, 723 (7th Cir. 2001)). But it is also understood that "[p]rison officials may not take unfair advantage of the exhaustion requirement" and that " a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.* (citing *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004)). Plaintiff's assertion that he was prevented

[7] The remainder of the grievance, in which Plaintiff was required to state the relief he was seeking, merely asks that staff "preserve camera! [*sic*]" and "[a]ll paperwork and medical records preserved [*sic*] for this incident." [DE 56-2 at 3]. Although Plaintiff argues the existence of a factual dispute as to whether the requested information was preserved—a fact presumably going to the merits of Plaintiff's § 1983 claims, this is immaterial to the issue of exhaustion. *See Anderson*, 477 U.S. at 248 (explaining that the substantive law controls which facts are material).

from filing a grievance against Nurse Ellis because of the denial of the proper form suggests this very problem, and therefore must be assessed should it indicate a genuine issue of material fact as it pertains to the issue of exhaustion.[8] But as the history of Plaintiff's grievance filings, other affidavits, and prison records show, and given that Plaintiff has not presented any other evidence to substantiate this sole assertion, the Court is not convinced that an actual and genuine dispute of material fact exists here. *See Witvoet v. Big Iron Auction Co.*, 2026 WL 1256437, at *2 (C.D. Ill. May 7, 2026) (alteration omitted) (quoting *Anderson*, 477 U.S. at 250) (explaining that "a scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; 'there must be evidence on which the jury could reasonably find for the non-movant'").

Most importantly, on November 23, 2024, Plaintiff claims he was denied an opportunity to file a grievance against Nurse Ellis, yet he turned around and filed Grievance No. 24-198483 the very same day. This is the first strike to show that Plaintiff's assertion is unfounded. Moreover, in Grievance No. 24-198483, Plaintiff clearly and intentionally filed a grievance against Defendant Burke, and nothing has been shown to indicate that he could not otherwise state a complaint against Nurse Ellis as well, especially where he did so against Sgt. Vesquez in the same grievance. This is strike two. Finally, WCF's DELTA system indicates that the only grievance filed by Plaintiff for this incident, and the most recent grievance overall, is Grievance

---

[8] Courts in this circuit recognize that "[s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 459–60 (7th Cir. 2014); *Hill v. Tangherlini*, 724 F.3d 965, 967–68 & n.1 (7th Cir. 2014) (explaining that affidavits, among other written statements, should not be discredited at summary judgment despite their inherent "self-serving" nature); *Hansen v. Lutheran Univ. Ass'n, Inc.*, 2026 WL 775397, at *4 (N.D. Ind. Mar. 19, 2026) ("[T]he fact that a declaration is 'self-serving' is not a reason to disregard it. That old saw was laid to rest long ago.").

No. 24-198483; nothing presented by Plaintiff has shown that he could not request an additional grievance since he was clearly given one to begin with.[9] This is strike three.

Plaintiff's affidavit appears designed to create a dispute of fact, and a trial is ultimately necessary if "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Whitaker v. Dempsey*, 144 F.4th 908, 917 (7th Cir. 2025) (quoting *Anderson*, 477 U.S. at 250). But the key words here are "genuine" and "reasonably," and it is understood that "[i]t is not enough for the non-moving party to raise a 'metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *see also James v. Hale*, 959 F.3d 307, 315 (7th Cir. 2020) (explaining that judges may "scrutinize the substance of an affidavit offered in response to a summary-judgment motion to determine whether a reasonable jury could rely on the factual statements it contains"). "If a party's sworn statements are 'utterly implausible in light of all relevant circumstances,' a court may reject them without a trial." *Whitaker*, 144 F.4th at 917 (quoting *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)). Simply put, the record shows that Plaintiff could have initiated a formal grievance against Nurse Ellis but, when given the opportunity to do so, ultimately did not. This fact is undisputed and fatal. Accordingly, Plaintiff failed to exhaust his available administrative remedies against Nurse Ellis and therefore cannot now pursue a § 1983 claim against her. *See* § 1997e(a).

[9] WCF's DELTA system further shows that Plaintiff is not bereft of opportunities to file a grievance when he so chooses. Between 2008 and 2024, Plaintiff filed thirty-seven grievances or appeals, with twelve of those grievances having been filed in 2024 alone. [*See* DE 48-3].

### III. Plaintiff Did Not Exhaust His Available Administrative Remedies Against Defendant Burke Because He Failed to Complete the Grievance Process.

In contrast to Nurse Ellis, Plaintiff did initiate the grievance process against Defendant Burke when Grievance No. 24-198483 was filed. The issue here, however, is that Plaintiff did not complete the grievance process in its entirety. *Ford*, 362 F.3d at 398 (explaining that prisoners must complete all outlined steps prior to bringing suit under § 1983).

Plaintiff acknowledges and admits that he received a response to Grievance No. 24-198483 from the Grievance Specialist on December 26, 2024. [DE 56-2 at 2]. Plaintiff argues that he did not receive an "agree or disagree" form and thus could not obtain a grievance appeal to proceed in accordance with WCF's policy. [DE 56 at 3]. But as explained by WCF's Grievance Specialist, there is no separate "agree or disagree" form. Rather, following the resolution or rejection of an inmate's initial grievance, the Grievance Specialist issues a State Form 45475 ("Return of Grievance"). [DE 48-1 at ¶¶ 11–12]. The response contains an "Agree/Disagree" option at the bottom of the page which must be filled out. [*See* DE 48-4 at 1; DE 56-2 at 4]. The response must also be signed by the aggrieved inmate and returned within five business days of receipt to then receive a State Form 45473 ("Grievance Appeal") and proceed with the remainder of the grievance process. [DE 48-1 at ¶¶ 13, 19].

Here, the response, which Plaintiff admits he received and attached to his summary judgment briefing, clearly shows that the "Agree/Disagree" option was not filled out. [*See* DE 56-2 at 4, 6]. Plaintiff also did not sign or return the form in a timely manner. [*See id.*; DE 48-1 at ¶ 37; DE 59 at 2]. Because Plaintiff did not complete the first step of the appeal process, much less the remaining steps outlined in WCF's grievance policy, Plaintiff failed to exhaust his available administrative remedies. *See Pyles*, 829 F.3d at 864 (quoting *King*, 781 F.3d at 893) ("The exhaustion requirement is interpreted strictly; thus, a 'prisoner must comply with the

specific procedures and deadlines established by the prison's policy.'"). Plaintiff's § 1983 claims are therefore procedurally barred. *Pozo*, 286 F.3d at 1025 (citing *Woodford*, 548 U.S. at 93).

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Joint Motion for Summary Judgment [DE 48] in its entirety. Because this Opinion and Order ends the merits review of this matter, the Clerk of Court is **DIRECTED** to enter judgment in Defendants' favor and close this case.

SO ORDERED.

ENTERED: August 13, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court